IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TCS-TEXAS, L.P.;<br><br>    Plaintiff;<br><br>v.<br><br>GRAMERCY EMERGENCY MANAGEMENT PLLC; MERCER EMERGENCY CENTER-VICTORIA, LLC; GRAMERCY EMERGENCY CENTER-VICTORIA, LLC; UCHENNA OJIAKU; EMANUELLA AKUAZOKU; VICTOR HO; ARIELLE LAWSON; JAMES GROSSMAN; and KATHLEEN GROSSMAN;<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING WITHOUT PREJUDICE MOTION TO DISMISS COUNTERCLAIM<br><br>Case No. 2:18-cv-00396-JNP-BCW<br><br>District Judge Jill N. Parrish |

James Grossman, Kathleen Grossman, Uchenna Ojiaku, and Emmanuella Akuazoku asserted a counterclaim for breach of contract against TCS-Texas, L.P. (TCS). Before the court is TCS's motion to dismiss the counterclaim. [Docket 35]. The court DENIES WITHOUT PREJUDICE the motion to dismiss.

**BACKGROUND**

TCS leased a CT scan machine to Gramercy Emergency Management PLLC. The lease is governed by two separate contracts: a Master Lease Agreement (Master Agreement), which outlines some of the general agreements between the parties, and a Lease Schedule, which defines the specific lease terms for the CT machine. The Master Agreement provides that if any terms of that agreement conflict with the Lease Schedule, the Lease Schedule controls. The Grossmans,

Ojiaku, and Akuazoku signed individual guaranties in which they agreed to make the lease payments if Gramercy Emergency defaulted on this obligation.

TCS sued Gramercy Emergency, the Grossmans, Ojiaku, Akuazoku, and several other entities and individuals, alleging that Gramercy Emergency failed to make required lease payments. The Grossmans, Ojiaku, and Akuazoku (counterclaim plaintiffs) filed a counterclaim for breach of contract. They alleged that TCS breached the lease by providing an inoperable CT machine and ignoring their demands that TCS repair or replace the faulty equipment.

## ANALYSIS

TCS moved to dismiss the breach of contract counterclaim. It attached the Master Agreement to its motion and argued that the terms of this document do not allow the counterclaim plaintiffs to assert a breach of contract claim. TCS points to provisions of the Master Agreement that disclaim any obligation on the part of TCS to provide a CT machine that functions. Paragraph 3 of the Master Agreement, for example, provides: "LESSEE'S PAYMENT OBLIGATIONS . . . ARE ABSOLUTE, UNCONDITIONAL AND NOT SUBJECT TO ABATEMENT, REDUCTION OR SETOFF FOR ANY REASON, INCLUDING WITHOUT LIMITATION THE FAILURE OF THE LEASED PROPERTY TO FUNCTION PROPERLY." Paragraph 9 of the Master Agreement also provides that Gramercy Emergency waives "ANY ABATEMENT, REDUCTION, [or] RECOUPMENT . . . [for the failure] OF THE LEASED PROPERTY TO FUNCTION PROPERLY."

TCS also cites provisions in the Master Agreement that purportedly waived the counterclaim plaintiffs' right to even assert a legal claim against TCS. Paragraph 9 of the agreement states that Gramercy Emergency's obligation to make lease payments is absolute and that it waived "ANY ABATEMENT, REDUCTION, RECOUPMENT, COUNTER-CLAIM, SETOFF,

DEFENSE OR ADJUSTMENT OF ANY KIND OR FOR ANY REASON." Paragraph 18 also provides: "**In no event shall Lessor be liable to Lessee or any other party for consequential, incidental, special, exemplary or similar damages arising out of or related to the transactions contemplated herein (in tort, contract or otherwise) . . . , and Lessee unconditionally and irrevocably waives and releases any claim therefore.**" TCS argues that these provisions waived the counterclaim defendant's right to assert a claim for breach of contract.

The arguments made by TCS raise a number of unanswered questions. First, it is unclear whether the counterclaim defendants are bound by the waivers found in the Master Agreement. The counterclaim plaintiffs did not sign the Master Agreement—Gramercy Emergency did. Instead, the counterclaim plaintiffs signed individual guaranties that bound them to make the lease payments for the CT machine if Gramercy Emergency defaulted on this obligation. But TCS has not pointed to language in the individual guaranties that contractually binds the counterclaim plaintiffs to the waivers found in the Master Agreement.

Even if the counterclaim plaintiffs are bound by the waivers, other legal issues remain. For example, at least one Texas court struck as unconscionable a provision in a lease contract requiring lease payments even if the equipment were inoperable. *Tri-Cont'l Leasing Corp. v. Law Office of Richard W. Burns*, 710 S.W.2d 604, 606–07 (Tex. App. 1985). It remains to be seen whether a similar lease provision would be unconscionable under Utah law.

Moreover, there is a question as to whether the alleged waivers of legal remedies found in the Master Agreement negate the lease as illusory. "When there exists only the facade of a promise, i.e., a statement made in such vague or conditional terms that the person making it commits himself to nothing, the alleged 'promise' is said to be 'illusory.'" *Peirce v. Peirce*, 994 P.2d 193, 199 (Utah 2000) (citation omitted); *accord* RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. e (1981). An

illusory promise is not valid consideration that can support the formation of a contract. *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036–37 (Utah 1985). In this case, TCS argues that provisions of the Master Agreement prevent Gramercy Emergency and the counterclaim plaintiffs from asserting a legal claim that TCS breached the terms of the lease documents. In other words, TCS asserts that the counterclaim plaintiffs have no right to enforce the lease contracts in a court of law. If TCS's interpretation of the Master Agreement is correct, this reading raises the question of whether the lease documents create an illusory contract. *See Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984) ("It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract.").

The court, however, is not in a position to evaluate the arguments made by TCS or to address the questions raised by the court above. TCS correctly argues that this court may consider the lease contracts when evaluating the motion to dismiss because these documents are necessarily the foundation of the counterclaim plaintiffs' breach of contract claim. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). But TCS has not provided all of the relevant contracts that form the lease agreement. TCS attached only the Master Agreement to its motion to dismiss. It did not provide the Lease Schedule, which enumerated the specific terms of the lease agreement. Indeed, the Master Agreement states that the provisions of Lease Schedule control over any conflicting contract terms found in the Master Agreement. In the absence of the Lease Schedule, the court is not in a position to interpret the entirety of the lease agreement between TCS and Gramercy Emergency.

## CONCLUSION

The court, therefore, DENIES WITHOUT PREJUDICE TCS's motion to dismiss the counterclaim. [Docket 35]. TCS may file a renewed motion that attaches all of the relevant contracts if it wishes to do so. TCS must either file a motion to dismiss or answer the counterclaim within 21 days of this order.

Signed March 27, 2019.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge